UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DANET BEGNAUD CLEMENTS | CASE NO. 6:20-CV-01205 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| SOUTHERN NATIONAL LIFE INSURANCE CO INC | MAGISTRATE JUDGE CAROL B. WHITEHURST |

MEMORANDUM RULING

The present matter before the Court is Southern National Life Insurance Company's ("Southern National") Motion for Summary Judgment on the Merits Based on the Administrative Record [ECF No. 18]. Plaintiff opposes the motion.

I.
BACKGROUND

On August 15, 2019, while in the course and scope of his employment with M.C. Electric, LLC, Shawn Anthony Clements was fatally electrocuted while working at the Cote Blanche Salt Mine in St. Mary Parish, Louisiana.[1] At the time of his death, he was covered by a Group Term Life Insurance policy (the "Plan") that included Accidental Death and Dismemberment coverage. The policy was issued by Southern National and provided to Clements by his employer. Clements' biological son, TC, was designated as the beneficiary on the policy.[2]

On June 24, 2020, Southern National issued payment in the amount of $8,750 to Danet Begnaud Clements ("Plaintiff"), as the natural tutor of TC.[3] Southern National, however, denied benefits under the Accidental Death and Dismemberment policy pursuant to an exclusion in the

---

[1] ECF No. 1, Petition.
[2] *Id.*
[3] *Id.*

1

policy stating that benefits would not be paid for any loss "caused or contributed to" by "injury sustained under the influence of narcotics, unless administered on the advice of a physician."[4]

Plaintiff filed her Petition seeking recovery of the benefits under the Accidental Death and Dismemberment policy in the 16th Judicial District Court for the Parish of Iberia. Southern National subsequently filed a Notice of Removal to this Court alleging that the claims were governed by ERISA. On February 5, 2021, this Court entered an Order finding that the claims at issue were governed by ERISA based upon the joint stipulation filed by the parties.[5] On September 21, 2021, the Court entered an Order finding that that the Administrative Record is complete and that the Plan grants Southern National full discretionary authority to determine eligibility for benefits and/or to construe the terms of the benefit plan.

## II.
## LAW

### A.     Summary Judgment Standard

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[6] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[7] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[8] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an

---
[4] Administrative Record ("AR") (ECF No. 7), p. 0096.
[5] ECF No. 13.
[6] Fed. R. Civ. P. 56(a).
[7] *Id.*
[8] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).

2

absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[9]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[10] "Credibility determinations are not part of the summary judgment analysis."[11] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[12]

B.   **Standard of Review**

The Supreme Court has held that the de novo standard applies to adjudication of ERISA benefit disputes unless the plan documents give "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."[13] If the court determines that the plan administrator has discretionary authority to determine eligibility for benefits or to construe the terms of the plan, courts must base their review of both the legal and factual aspects of the administrator's decision under an abuse of discretion standard.[14] Here, Southern National has discretionary authority to interpret the terms of the policy and to make

---

[9] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[10] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[11] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[12] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[13] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 111-115 (1989).
[14] *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).

3

benefit eligibility determinations.[15] Accordingly, the question for the Court is whether Southern National's denial of benefits was arbitrary and capricious. Review of this question is limited to the record that was before Southern National at the time it made its final claim decisions.[16] If South National's decision "is supported by substantial evidence and is not arbitrary or capricious, it must prevail."[17] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[18] Southern National's decision can only be deemed arbitrary "if made without a rational connection between the known facts and the decision or between the found facts and the evidence."[19] Under the abuse of discretion standard, a court's "review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision falls somewhere on a continuum of reasonableness — even if on the low end."[20]

### C. Conflict of Interest

*Metropolitan Life Insurance, Co. v. Glenn* requires a reviewing court to first consider conflicts of interest as a factor in its review of the administrator's decision.[21] In *Glenn*, the Supreme Court addressed the issue of "whether a plan administrator that both evaluates and pays claims operates under a conflict of interest in making discretionary benefit determinations," and if so, how that conflict should be taken into account on judicial review.[22] The Supreme Court held that a conflict of interest does exist where "the entity that administers the plan . . . both determines

---

[15] ECF No. 17.
[16] *See Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 299-300 (5th Cir. 1999)(abrogated on other grounds).
[17] *Schexnayder v. Hartford Life & Acc. Ins. Co.*, 600 F.3d 465, 468 (5th Cir. 2010) (quoting *Ellis v. Liberty Life Assurance Co. of Boston*, 394 F.3d 262, 273 (5th Cir. 2004)).
[18] *Lain v. UNUM Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002)
[19] *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)
[20] *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389 (5th Cir. 2007).
[21] 554 U.S. 105, 128 (2008).
[22] *Id.* at 2350.

whether an employee is eligible for benefits and pays benefits out of its own pocket."[23] The Supreme Court further held that "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits."[24] The Fifth Circuit has applied a "sliding scale standard" where an administrator is self-interested, so that the administrator's decision is given less than full deference.[25] "The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."[26] In cases where an administrator's dual role establishes a potential conflict of interest, but the plaintiff presents no further evidence with respect to the degree that a conflict exists, the Fifth Circuit has held that the administrator's decision should be reviewed "with only a modicum less deference than we otherwise would."[27]

Here, Southern National is self-interested because it both insures and administers the plan. However, apart from Southern National's dual role, Plaintiff presents no further evidence on the degree of the conflict or how that conflict affected Southern National's decision.[28] Accordingly, Southern National's decision must be viewed "with only a modicum less" deference than would be applied absent Southern National's dual role.

### III.
### ANALYSIS

The Plan contains an exclusion for the Accidental Death and Dismemberment benefits which reads:

This Certificate does not cover any loss caused or contributed by:

---

[23] *Id.*
[24] *Id.*
[25] *Vega*, 188 F.3rd at 295-97.
[26] *Id.* at 297.
[27] *See Corry*, 499 F.3d at 398 (quoting *Vega*, 188 F. 3d at 301).
[28] *Id.*

5

5) Injury sustained under the influence of narcotics, unless administered on the advice of a physician.[29]

In applying this exclusion, Southern National considered the opinions of Deirdre Barfield, MD, FACP, MBA, Southern National's Senior Medical Director, who reviewed the relevant medical documents.[30] In her email correspondence, Dr. Barfield states:

> I have reviewed the autopsy report, toxicology and death certificate. The toxicology report indicates multiple substances detected including amphetamine, hydrocodone, oxycodone, oxymorphone and THC metabolites. Although the Anatomic summary of the autopsy says "V. Toxicology negative" it lists "A. Amphetamine, oxycodone, oxymorphone, hydrocodone, THC." Additionally, the death certification list polysubstance abuse as a significant condition contributing to death.
>
> Exclusion #5, Injury sustained [under] the influence of narcotics is applicable in this case. There is no evidence that these substances are or would be prescribed by a physician.[31]

The record reflects that an autopsy was conducted on Clements on August 16, 2019.[32] In conjunction with that autopsy, the Louisiana Forensic Center, LLC performed a forensic pathology test, and NMS Labs issued a toxicology report on Clements on September 7, 2019.[33] The toxicology report found that Clements had multiple narcotic drugs in his blood system:

1. Amphetamine at a level of 500 ng/mL.
2. Hydrocodone-Free at a level of 15 ng/mL.
3. Oxycodone-Free at a level of 24 ng/mL.
4. Oxymorphone-Free at a level of 2.0 ng/mL.
5. 11 Hydroxy Delta 9 THC at a level of 3.6 ng/mL.
6. Delta 9 Carboxy THC at a level of 100 ng/mL[34]

The "Reference Comments" in the toxicology report described the significance of these levels.[35] The Reference Comments, in conjunction with the levels noted in the toxicology report, indicate

---

[29] AR 0024.
[30] AR 0100-0101.
[31] *Id.*
[32] AR 0091.
[33] AR 0096-0099; AR 0091-0099
[34] *Id.*
[35] *Id.*

that the levels of narcotic drugs in Clements' blood were not trace amounts. In fact, the level of amphetamines fell in the range associated with overdose fatalities.[36] As noted in Dr. Barfield's correspondence, Clements' death certificate notes polysubstance abuse as an "other significant condition contributing to death."[37]

Plaintiff argues that the Plan is ambiguous because it does not define the term "under the influence." Jurisprudence dictates that when construing ERISA plan provisions, courts are to give the language of an insurance contract its ordinary and generally accepted meaning if such a meaning exists.[38] Further, ambiguous terms are construed strictly in favor of the insured, but only if the plan terms remain ambiguous after applying ordinary principles of contract interpretation.[39] The term "under the influence" of a substance is a commonly used term and generally means that a substance influences or affects a person's normal physical or mental processes. The Merriam-Webster online dictionary defines the term as "being affected by."[40] Plaintiff has not suggested an interpretation of the phrase that would weigh in her favor. The Court finds that there is no ambiguity in the use of the term "under the influence" of narcotics in the Plan exclusion. Considering the record as a whole, Southern National's determination that Clements "was under the influence" within the meaning of the Plan is not arbitrary and capricious.

Next, Plaintiff argues that the Plan exclusion is ambiguous because it is unclear as to the requirement of causation. Specifically, Plaintiff asserts that it is unclear whether the exclusion applies to any injury occurring while an insured is under the influence of narcotics or whether the narcotics must be the cause of the injury. Counsel for Southern National argues that there is no

---

[36] AR 0097.
[37] AR 0052.
[38] *Miller v. Reliance Standard Life Ins. Co.*, 999 F.3d 280, 282 (5th Cir. 2021) (citing *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014).
[39] *Id.*, citing *Ramirez v. United of Omaha Life Ins. Co.*, 872 F.3d 721, 725 (5th Cir. 2017).
[40] *See* https://www.merriam-webster.com/dictionary/under%20the%20influence%20of.

causation requirement, and that the exclusion applies to any injury occurring while the insured is under the influence of narcotics. Despite the conflicting interpretations of counsel, the actual Plan language is unambiguous and provides that the Plan does not cover any loss "caused or contributed" by an injury sustained while under the influence.[41] In other words, Clements' death must have been caused by an injury he sustained while he was under the influence of narcotics; at a minimum, that injury must have contributed to Clements' death even if it did not cause death. Clements' death certificate states that polysubstance abuse was a contributing cause of his death.[42] Dr. Barfield specifically cited this finding in her determination that the exclusion should apply.[43] The Court finds that there is no ambiguity in the relevant Plan language and that Southern National's interpretation of the exclusion is reasonable.

Based upon the foregoing and a complete review of the Administrative Record, the Court finds that Southern National's decision to deny benefits under the Accidental Death and Dismemberment provision of the Plan is based on a fair reading of the Plan, is supported by substantial evidence and is not arbitrary or capricious. Accordingly, Southern National Life Insurance Company's Motion for Summary Judgment on the Merits Based on the Administrative Record [ECF No. 18] is GRANTED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

THUS DONE in Chambers on this 21st day of October, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[41] AR 0024.
[42] AR 0052.
[43] AR 0100-0101.